IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>KYLE KISSELL,<br><br>    Defendant. | MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br><br>Case No. 2:07 CR 00164 |

This matter is before the Court on Defendant's motion to suppress. On June 11, 2007, the Court conducted an evidentiary hearing on the motion. At the conclusion of the hearing, the Court ordered a transcript as well as supplemental briefing from the parties. Thereafter, on August 24, 2007, the Court held a supplemental hearing on the motion. After thorough review and consideration of the pleadings submitted by the parties and the testimony presented at the evidentiary hearing on the motion to suppress, the Court enters the following memorandum opinion and order.

BACKGROUND

The Court finds the relevant facts as follows.[1]  On February 25, 2007, Trooper Steven Clyde of the Utah Highway Patrol was on duty in Hurricane, Utah.  At approximately 2:00 p.m. Trooper Clyde, a certified radar operator, clocked a green Subaru traveling at 86 miles per hour in a 75 mile per hour zone.  (Tr. at 8, 9.)  Trooper Clyde also observed that the green Subaru did not have a front license plate.  (Tr. at 6, 8.)  Recognizing these to be violations of Utah law, Trooper Clyde initiated a traffic stop of the vehicle.  While driving behind the Subaru with his emergency lights activated, Trooper Clyde noticed a passenger sit up in the back seat.  (Tr. at 9.)

The Subaru stopped on the side of the interstate and Trooper Clyde approached the vehicle on the passenger side where he spoke to the driver through the passenger window.  (Tr. at 9, 10.)[2]  Trooper Clyde began by telling the driver, later identified as Kyle Kissell, that he had been stopped for speeding.  (Pl.'s Ex. 1 at 4:02:06.)  Trooper Clyde then asked Kissell for his license, registration and proof of insurance.  (Pl.'s Ex. 1 at 14:02:35.)

While speaking with Kissell through the passenger window, Trooper Clyde noticed the smell of burnt marijuana.  (Tr. at 10.)  Trooper Clyde testified that having previously received training on the recognition of marijuana, and having made numerous prior arrests for possession and use of marijuana, he immediately recognized the distinctive odor.  (Tr. at 6-8.)  Trooper Clyde also noticed the smell of tobacco smoke and observed cigarette ashes.  When asked about

---

[1]Reference to the transcript of the evidentiary hearing conducted on June 11, 2007, will be cited as "Tr. at __."

[2]The events of the traffic stop were recorded on the video camera located in Trooper Clyde's patrol car.  The video recording was introduced into evidence as Pl.'s Ex. 1.

the smoke and ashes, Kissell admitted that he smoked cigarettes and produced a package of cigarettes from his pocket. (Tr. at 10.) From the driver's license, Trooper Clyde determined that Kissell was only eighteen years old. Under Utah law, a person must be nineteen years old to use or possess tobacco. Utah Code Ann. § 76-10-105. In addition, Trooper Clyde observed that at the time of the stop the male passenger in the back seat was not wearing a seatbelt, in violation of Utah law. Given the seatbelt violation, Trooper Clyde asked the passenger for his identification as well. (Tr. at 11-12.) The passenger stated that he did not have a driver's license or any identification, but verbally identified himself as John Snow, and provided a date of birth and social security number. (Tr. at 10, 13, 14.)

Trooper Clyde questioned Kissell about the smell of marijuana inside the vehicle. (Tr. at 20.) Kissell declined any knowledge of the marijuana and said he had not smoked in two months. (Tr. at 20-21.) Trooper Clyde then asked Kissell if the passenger smoked marijuana and Kissell said he did not know. (Tr. at 21.)

Trooper Clyde returned to his patrol car and initiated a records check on both Kissell and his passenger. (Tr. at 22.) Approximately twenty minutes into the stop, and approximately thirteen minutes after initiating the computer checks, dispatch informed Trooper Clyde that the passenger had two outstanding statewide arrest warrants related to drug offenses. (Tr. at 14, 15; Pl.'s Ex. 1 at 14:07:32–14:20:00.) Trooper Clyde returned to Kissell's vehicle and issued Kissell a criminal citation for under-age possession of tobacco and a warning for speeding. (Tr. at 23.) Trooper Clyde then asked the passenger to exit the vehicle at which time he was arrested on the outstanding warrants. (Tr. at 23.)

Trooper Clyde handcuffed the passenger, seated him in the back of his patrol car and returned to Kissell's vehicle to conduct a search incident to the passenger's arrest. (Tr. at 15, 24-26, 28.) Trooper Clyde advised Kissell that he was taking the passenger into custody and he asked Kissell for the passenger's bag so he could search it. (Tr. at 28.) Kissell provided Trooper Clyde with the black duffel bag that had been in the back seat next to the passenger and asked if he could retrieve some personal items from the bag. (Tr. at 24.) At Kissell's direction, Trooper Clyde removed some clothing and a cellular phone charger from the black bag and gave these items to Kissell. (Tr. at 24.)

During his search of the black duffel bag, Trooper Clyde found approximately 2,000 M.D.M.A. (ecstacy) pills. (Tr. at 15.) Thereafter, Trooper Clyde searched a second bag, located on the front floorboard of the vehicle on the passenger side. The second bag contained a digital scale, a white rock substance (confirmed later to be cocaine), prescription medication and a ceramic pipe with marijuana residue. (Tr. at 16.) After finding these items inside Kissell's vehicle, Trooper Clyde arrested Kissell.

Kissell filed the instant motion seeking to suppress the evidence obtained as a result of the February 25, 2007 traffic stop on the grounds that his arrest was unlawful, and the detention prior to his arrest was excessive. (Tr. at 17.)

## DISCUSSION

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures by government actors. See U.S. Const. Amend. IV; United States v. Sanchez, 89 F.3d 715, 717 (10th Cir. 1996). "[T]he underlying command of the Fourth

Amendment is always that searches and seizures be reasonable." Wilson v. Arkansas, 514 U.S. 927, 931 (1995).  It is well established that a routine traffic stop is a seizure within the meaning of the Fourth Amendment.  United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995), cert. denied, 518 U.S. 1007 (1996).  The reasonableness of such a stop is reviewed under a two-part test set forth in Terry v. Ohio, 392 U.S. 1, 20 (1968).  Under that test, the Court must make a dual inquiry asking first whether the officer's action was justified at its inception and second whether it was reasonably related in scope to the circumstances which justified the interference in the first place.  United States v. Williams, 271 F.3d 1262, 1266 (10th Cir. 2001), cert. denied, 535 U.S. 1019 (2002).

    A.    The Initial Stop

A traffic stop is justified at its inception "if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."  Botero-Ospina, 71 F.3d at 787.  In this case, Trooper Clyde observed Kissell's vehicle traveling 86 miles per hour in a 75 mile per hour zone in violation of Utah law.  See Utah Code Ann. § 41-6a-601 (providing that it is a criminal offense for a vehicle to fail to drive within the speed limit).  Additionally, Trooper Clyde observed that Kissell's vehicle failed to display a front license plate, also in violation of Utah law.  See Utah Code Ann. § 41-1a-404(1) (providing license plates shall be attached to the vehicle "one in the front and the other in the rear").  Based on these observations, Trooper Clyde had reasonable articulable suspicion that a traffic violation had occurred, and therefore the stop of Kissell's vehicle was justified at its inception.

B.     The Detention

Having determined that the stop of Kissell's vehicle was justified at its inception, the Court must ask "whether the officer's actions during the detention were reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20.  The Supreme Court has made clear that "an investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." Florida v. Royer, 460 U.S. 491, 500 (1983).

"An officer conducting a routine traffic stop may run computer checks on the driver's license, the vehicle registration papers, and on whether the driver has any outstanding warrants or the vehicle has been reported stolen." United States v. Mendez, 118 F.3d 1426, 1429 (10th Cir. 1997).  "The officer may detain the driver and his vehicle as long as reasonably necessary to make these determinations and to issue a citation or warning." United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997); United States v. Martinez, 983 F.2d 968, 974 (10th Cir. 1992), cert. denied, 507 U.S. 1056 (1993).  Additionally, where a passenger is also guilty of a traffic infraction, a vehicle may be detained long enough to investigate the passenger and issue a citation.  United States v. Hill, 60 F.3d 672, 682 (10th Cir.), cert. denied, 516 U.S. 970 (1995); see also United States v. Rice, 483 F.3d 1079, 1084 (10th Cir. 2007) ("Because passengers present a risk to officer safety equal to the risk presented by the driver, an officer may ask for identification from passengers and run background checks on them as well.").

Here, given Kissell's traffic violations combined with the passenger's seat belt infraction,

Trooper Clyde appropriately requested the relevant identifying information from both occupants and returned to his patrol car to run the permitted computer checks. See Wood, 106 F.3d at 945; Hill, 60 F.3d at 682. The video recording of the incident indicates that approximately thirteen minutes elapsed from the time Trooper Clyde returned to his patrol car and initiated the computer checks until dispatch responded with the arrest warrant information about Kissell's passenger. (Pl.'s Ex. 1 at 14:07:32–14:20:00.) While Kissell suggests that this was an inordinate amount of time, the evidence reveals that the computer search was complicated by the passenger's lack of identification and the resulting difficulty in verifying his date of birth and social security number. (See Pl.'s Ex. 1 at 14:16:50.) Although the delay was not attributable to Kissell, neither was it attributable to Trooper Clyde. See United States v. Place, 462 U.S. 696, 709-10 (1983) ("[I]n assessing the effect of the length of the detention, we take into account whether the police dilligently pursue their investigation."). Trooper Clyde was thus justified in perpetuating the stop long enough to obtain the results of his legitimate computer inquiries. See United States v. Shareef, 100 F.3d 1491, 1501-02 (10th Cir. 1996) (Where, *inter alia*, police "computers used to verify license information were down or slow" and the driver was not carrying a license, "a detention of thirty minutes, given the totality of the circumstances . . . was reasonable"); see also United States v. Rutherford, 824 F.2d 831, 834 (10th Cir. 1987) (one-hour investigative stop prior to arrest upheld when nearly one half-hour was due to problems with the police computer, officers had received tip implicating defendant in drug trafficking and there were inconsistencies between vehicle's license plate and registration).

C.     The Search

When the records check revealed the warrants for Kissell's passenger, Trooper Clyde arrested the passenger and then searched the bags found within the vehicle incident to the passenger's arrest. In New York v. Belton, 453 U.S. 454 (1981), the Supreme Court held that when an officer has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the entire passenger compartment of that automobile. Id. at 460. As part of that search, the officer "may also examine the contents of any containers found within the passenger compartment." Id. The Court explained that "container" includes

> any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing and the like. Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk.

Id. at 461 n.4.

The Court endorsed the "passenger compartment" rule based on "the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary item.'" Id. (quoting Chimel v. California 395 U.S. 752, 763 (1969)). The Court specifically acknowledged, however, that the holding in Belton was broad enough to encompass the search of containers that "could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested." Id. at 461.[3] A majority of the

---

[3] Judges and commentators alike have criticized this aspect of Belton. See, e.g., Belton, 435 U.S. at 468 (Brennan, J., dissenting) ("Disregarding the principle 'that the scope of a

8

Supreme Court continues to endorse the "bright line" rule set forth in Belton explaining that "the need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within the reach of an arrestee at any particular moment, justifies the sort of generalizations which Belton enunciated." Thornton, 541 U.S. 615, 622-23 (2004); see also United States v. Humphrey, 208 F.3d 1190, 1202 (10th Cir. 2000) ("Belton emphasized that its holding created a 'bright line' rule, intended to provide specific and coherent guidance to officers in the field.").

Following Belton, lower courts have interpreted "passenger compartment" to include all areas of the vehicle that are reachable without exiting the vehicle and without dismantling door panels or other parts of the car. See Wayne R. LaFave, Jarold H. Israel & Nancy J. King,

---

warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement,' the Court for the first time grants police officers authority to conduct a warrantless 'area' search under circumstances where there is no chance the arrestee 'might gain possession of a weapon or destructible evidence.'"); Thornton v. United States, 541 U.S. 615, 631 (2004) (Scalia, J., concurring) ("If we are going to continue to allow Belton searches on *stare decisis* grounds, we should at least be honest about why we are doing so.  Belton cannot reasonably be explained as a mere application of Chimel.  Rather, it is a return to the broader sort of search incident to arrest that we allowed before Chimel. . . .  I would therefore limit Belton searches to cases where it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."); Thornton, 541 U.S. at 624 (O'Connor, J., concurring in part) ("I write separately to express my dissatisfaction with the state of the law in this area. . . . [L]ower court decisions seem now to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of Chimel v. California.  That erosion is a direct consequence of Belton's shaky foundation."); United States v. McLaughlin, 170 F.3d 889, 893-95 (9th Cir. 1999) (Trott, J., concurring) (arguing that "in our search for clarity, we have now abandoned our constitutional moorings and floated to a place where the law approves of purely exploratory searches of vehicles"); David M. Silk, When Bright Lines Break Down: Limiting New York v. Belton, 136 U. Pa. L. Rev. 281, 290-91 (reviewing criticism of Belton for "abandon[ing] the theoretical underpinnings of the search incident to arrest doctrine").  While these arguments suggest there may be support for a reconceptualization of Belton, this Court remains bound by the precedent set forth therein.

Criminal Procedure § 3.7(a) at 203 (2d ed. 1999); United States v. Barnes, 374 F.3d 601, 604 (8th Cir. 2004); United States v. Infante-Ruiz, 13 F.3d 498, 502 n.1 (1st Cir. 1994). Thus, Belton has been extended to allow warrantless searches of the rear section of a suburban, a station wagon, and the trunk area of a hatchback. United States v. Henning, 906 F.2d 1392, 1396 (10th Cir. 1990) (upholding search of entire suburban and stating: "Where, as here, the vehicle contains no trunk, the entire inside of the vehicle constitutes the passenger compartment and may be searched"); United States v. Pino, 855 F.2d 357, 364 (6th Cir. 1988) (finding rear section of station wagon was "passenger compartment"), cert. denied, 493 U.S. 1090 (1990); United States v. Russell, 670 F.2d 323, 327 (D.C. Cir.) (finding hatchback of a car part of passenger compartment), cert. denied, 457 U.S. 1108 (1982). In fact, some courts have interpreted Belton as extending to hidden compartments within the vehicle so long as they are accessible from the inside of the vehicle without elaborate dismantling. See, e.g., United States v. Barnes, 374 F.3d 601, 604 (8th Cir. 2004) (upholding search of vehicle window well as part of passenger compartment), cert. denied, 543 U.S. 1079 (2005); United States v. Veras, 51 F.3d 1365, 1368, 1372 (7th Cir.) (finding secret compartment built into dash between back seat and rear window was part of passenger compartment), cert. denied, 516 U.S. 999 (1995); United States v. Willis, 37 F.3d 313, 317 (7th Cir. 1994) (finding the removable stereo was part of the passenger compartment within the vehicle).

In light of this precedent, the Court concludes that, having lawfully arrested Kissell's passenger, Trooper Clyde was permitted to search both of the bags that were located in the passenger compartment of Kissell's vehicle. The fact that the passenger was handcuffed and

located in the back of Trooper Clyde's patrol car at the time of the search does not yield a different conclusion.  In Thornton v. United States, 541 U.S. 615, 618 (2004), the Supreme Court sanctioned a search under Belton where it was performed after the police had handcuffed the arrestee and placed him in the back of the patrol car.  Id. (concluding that the Belton rule applies even when the arrestee has left the vehicle by the time the arresting officer first makes contact: so long as he is a "recent occupant" of the car, the search is permissible).  Similarly, the Tenth Circuit has explicitly held that a search is valid under Belton without regard to the fact that the search occurred after the occupant had been handcuffed and placed in the patrol car.  United States v. Humphrey, 208 F.3d 1190, 1202 (10th Cir. 2000).  Accordingly, Trooper Clyde's search of the two bags located within the passenger compartment of Kissell's vehicle was a valid search incident to the arrest of Kissell's passenger.[4]

Kissell also claims that his arrest, which followed the vehicle search, was unlawful.  However, the record indicates, and defense counsel confirms, that the evidence which is the subject of this motion was obtained from Kissell's vehicle *prior* to his arrest and not as a *result* of his arrest.  To the Court's knowledge, there was no evidence obtained as a result of Kissell's arrest.  Accordingly, the Court need not address this argument.

Because the evidence Defendant seeks to suppress was obtained as a result of a lawful

---

[4]Kissell claims that he should have been allowed to leave after Trooper Clyde issued the citation and warning, and argues that his detention beyond that time was unreasonable and in violation of the Fourth Amendment.  As previously explained, however, immediately following the issuance of the citation, Trooper Clyde arrested Kissell's passenger and conducted a lawful search of Kissell's vehicle incident to that arrest.  This Court's conclusion that Trooper Clyde was lawfully permitted to *search* the passenger compartment of Kissell's vehicle necessarily encompasses a finding that Trooper Clyde could lawfully *detain* Kissell's vehicle in order to conduct the search.

search, Defendant's motion to suppress is DENIED.

It is so ordered.

Dated this 13th day of September, 2007.

_____

Dee Benson
U.S. District Court Judge

12